143527 Stephen Ondo et al. v. City of Cleveland et al. Oral argument not to exceed 15 minutes per side. Ms. Gideon for the plaintiff's appellants. May it please the court. Good morning, your honors. My name is Sarah Gideon and I'm here on behalf of Stephen Ondo and Jonathan Simcox's appellants in this case. If I may, I would like to set aside five minutes for rebuttal. The Sixth Circuit provides a cause of action to those deprived of a constitutional right by law enforcement officers acting under the color of state law. Stephen Ondo and Jonathan Simcox's appellants have claims of excessive force, failure to intervene, equal protection violations, and intentional infliction of emotional distress. These claims come from early morning events on October 8, 2011. Cleveland police officers in a warrant sweep raided their home while Stephen, Jonathan, and Jonathan's brother Jesse were asleep. They used unreasonable and excessive force, humiliated them, and prevented Jonathan and Stephen from wearing pants to jail. The actions of the Cleveland police officers to deny Jonathan and Stephen pants were based specifically on the animus defendants have against Stephen and Jonathan's sexual orientation. Stephen and Jonathan are both homosexual males who were in a relationship at the time. So not letting people put their pants on before taking them to the police station, is that unreasonable seizure type theory? Is it excessive force? I know you just said something that has an equal protection kind of city of Cleveland thing going, but how about is it an unreasonable search as well? Or seizure? I guess it's really a seizure. We have not claimed that it's an unreasonable seizure. We have claimed that it is an equal protection violation. The entire episode on April 8th was contaminated with slurs about their homosexuality. All three are actually, in fact, homosexuals. They implied that perhaps there was some brother stuff going on. And when Jesse specifically asked the cops if he could go and retrieve them pants, Jonathan and Stephen were in the front yard. Out of curiosity, in terms of your research in the case, I mean, because one way of thinking about this case is that it has nothing to do with their sexual orientation. It's not the norm that when police see somebody and take them to the station, you do it in their underwear. Particularly when the explanation of, oh, well, if they put pants on, they might hide contraband or something dangerous, or we were in a rush. Those explanations don't work because they sent the brother up twice to get shoes. Correct. So that doesn't seem to make sense. And then you can always pat somebody down if you put their pants on. So I'm just curious. Do you look at cases and realize, well, we can't say unreasonable seizure because you actually are allowed to take people to the police station in underwear. It happens all the time. Is that what you found? You are allowed to take people. And I did research. There were several cases that the court had held in the favor of, for reasons that you stated, being able to put contraband in clothing. But did you hear what I also said? I don't understand that point. I mean, you just pat people down. The norm is people arrive at the police station with their pants on. That is the norm. Yes. This happened to be an early morning sweep, so they were not dressed. But to me, they say that the rationale behind not providing them pants was that they were in a hurry, which you've already actually proven one of my points for me. They sent the brother up twice. Jonathan and Steven were handcuffed together, so it would not have been that difficult for them to put their own pants on. And that was also one of the reasons given by the police was that they did not want to handcuff them for safety reasons to be able to put their pants on. That was not the case here. They were handcuffed together. They probably would have been able to at least put some type of cover-up over their boxer briefs. It was not only the denial of the pants. It was the reason for the denial of the pants, which was completely based on animus towards their homosexuality. And when the reason given by Cleveland police to Jesse and in front of Steven and Jonathan for not being able to wear pants was that faggots don't get to wear pants to jail. Another reason to show that they were not in a rush is everyone else during this morning's meeting. Well, you're talking about a lot of facts, and as you're well aware, the district court struck the affidavits. Yes. And so the facts that you are citing to us, where should we look for those in this record? Well, there's deposition testimony. Okay, and so all of this is you see where I'm going. You see the brief on the other side that suggests your shortcomings are not so much being addressed here. Okay, so there are two substantive issues raised in appeal here, and the first is the affidavits. In the Sixth Circuit, when deciding the admissibility of a post-deposition affidavit at the summary judgment stage, a court must first determine whether the affidavit contradicts the non-moving party's prior sworn testimony. Here, that is just not the case. There are slight inconsistencies that it is difficult. It was chaotic when Jonathan and Steven were, in fact, arrested. They were not permitted to see any of the police officers up until the deposition. These are rationales for why you were short on facts, and certainly it's understandable. But there also was a point where they heard the depositions of the officers and then came to know, apparently, who was who, who offered the slurs, who, you know, supposedly. But there was no amendment? I mean, the district court cites that. Yes. The time frame of this case was unfortunate for us. You know, in hindsight, we should have done things differently, and we are conceding that. Discovery ended very shortly after the officer depositions. We had already bypassed the cutoff to amend the pleadings. Our next step was to move forward and meet with our clients and have them be able to pinpoint from now seeing the officers at their depositions from then being able to pinpoint with us, which is how we drafted the affidavits. I don't think that the affidavits contradict their prior sworn testimony. There are inconsistencies as far as who had glasses on, who did not. We've never really been able to discover what the actual SWAT gear was, if it included glasses or if it did not. I don't understand. You've never been able to discover. We don't know what each officer was, in fact, wearing. A lot of their SWAT gear. What did you do to pursue that? Basically asked them in their depositions, and a lot of them responded, normal SWAT gear. If you look up SWAT gear, it can differ greatly. So we didn't know if certain guys had on glasses or hats to further conceal their identity. There's something I'm just not totally following. I thought everyone understood at this point in the case that the difficulties of figuring out who did what and when, that was all figured out at the time of the deposition. That's exactly why you supplemented things. The problem was you did it late. So I don't understand the idea that today you don't know who did what. I thought our problem was you couldn't learn it until the depositions. That's fair enough. That makes sense. But then as the district court judge found, you didn't supplement on a timely basis. Right. We did the best we could with what they were able to witness, and it wasn't until the depositions. And it was not to our benefit to wait and to decide to move forward and do the affidavits. I mean, looking back, we should have amended. Yes. But let's say the district court acted within her discretion in saying, listen, there's a procedure for this. It's okay that you waited until the depositions. In one sense, that's understandable. But you waited too long, and it was within her discretion to strike all that. That is very damaging to the excessive force claim. With respect to the equal protection claim, do the two go together? Or I thought there was not a problem with identifying, for example, Johnson with the equal protection claim. Well, there are three things about the affidavits. One is they contain the word belief, which I think is a word that should not have been included in the affidavits. Two, I do not think that the affidavits contradict. And it's within a court's discretion to be unwilling to overlook that. Do the cases bear that out? Well, we think it's an abuse of discretion to strike the affidavits in their entirety. They don't contradict prior testimony. The defendants don't point out which they think is belief and which they think is personal knowledge. And when that happens in the Sixth Circuit, the court is supposed to use a scalpel and not a butcher knife with the affidavits. That being said, I think that there was a butcher knife used here, and cutting off the entire affidavits being allowed resulted in summary judgment granted to the defendants on everything. That's the thing I'm trying to make sure I'm understanding. Except for the sake of argument that the affidavits were all properly struck, I thought that destroyed the excessive force claim because you're never able to identify a single officer with respect to a single act. I didn't think that was true for the equal protection claim because I thought there was, without the affidavits, still evidence about what Officer Johnson did. Am I not following this right? Or is it your view that, hey, if you strike all the affidavits, there really is no evidence supporting the claim? Just tell me the answer. May I? Please. I do think that as a result of striking the affidavits, the equal protection claim was also done away with. Properly. You have to have the affidavits to support either that claim or excessive force. Yes. In your view. Yes. Okay. You have reserved your five minutes. Thank you. You certainly have it. Good morning. May it please the Court, my name is Joseph Scott. It's my privilege to be here this morning on behalf of the appellees in this matter. Obviously, we seek affirmance of the District Court's decision as to both motions, the motion to strike and the motion for summary judgment in this case, and I think we have to take them in order. First, dealing with the motion to strike to determine what evidence, if any, constitutes the summary judgment record in this case. And obviously, that motion to strike dealt with the affidavits of the plaintiff's appellants, in this case, Jonathan Simcox and Stephen Ondo. We believe the District Court properly struck the entirety, as we asked, the entirety of both of those affidavits, and as much as they were premised, using the language that they chose to use to craft their own affidavits, based upon personal knowledge and belief. The appellants do not refute any of the case law, nor do I think they could refute any of the case law, that clearly indicates that affidavits even premised partially upon belief do not rise to the level of knowledge sufficient to form suitable evidence for Rule 56 purposes. They never sought leave of court to change that in any way, even after we pointed out the deficiencies in those affidavits, as they might have done, for instance, in a Rule 56e, would have afforded them an opportunity if they thought that, wait a minute, this is all personal knowledge, none of this is belief. They never sought to do that. And the way the affidavits are structured, it's clear that the qualifiers, if you will, personal knowledge and belief attach to each of the statements contained in their affidavits. When you look at those affidavits, certainly in the context of the entire record in this case, looking at the complaint and the verified interrogatory answers that simply incorporated the allegations of the complaint and sort of the exhaustive detail of the complaint and even the remarks that we hear today, that they were never able to identify specific individuals with specific conduct. So, counsel, I think I grasp everything you're saying with respect to all the claims except the equal protection claims. So I thought even with the assumption that the affidavits were properly struck, whether because they were information of belief or because they didn't supplement on time after the depositions, I still thought there was other evidence in the record showing that they were alleging that Officer Johnson had these slurs and Officer Johnson also did not allow them to put on pants. So I thought that evidence was still in the record even if you say the other stuff was properly taken out. Am I wrong about that? Yes, Your Honor. Particularly when you look at what they try and say in their affidavits is that their interactions were with two officers, Douglas Park and Ariel Rojas, not Officer Johnson. Please don't answer the question with respect to the affidavits, okay? Unless you want me to disagree with you. No, no, no. Okay. Affidavits out. Yes. My question to you, is there anything left in the record that supports the equal protection claim in two respects, that there were slurs during the arrest and that they weren't allowed to put their pants on? And I thought, was it through the Johnson deposition? I thought that evidence was there. Well, certainly each of the appellants testified during their deposition that there were slurs during the arrest. The officers denied those slurs. Okay. Fact dispute about slurs. We just established a fact dispute about slurs. Was there also evidence that they were not allowed to put their pants on? Well, clearly they were taken to jail wearing a t-shirt and boxer shorts. And the evidence about there was time to put pants on because the brother was sent up twice to get shoes. That's all in the record. Certainly. So why is there not a fact dispute on a kind of city of clay burn theory here that the only reason to treat these two people differently was an animus point? I don't understand why that record's not here on that claim. I think a number of reasons, Your Honor. One is, I don't think it's enough to say that we heard these homophobic slurs when we were being arrested and therefore we were treated differently than other folks. There's no evidence in the record that other people under similar circumstances weren't treated exactly the same way. And I think in order to make out this... Where's the evidence that says, in summary judgment, that the norm is to take people to the police station in their underwear? The evidence on summary judgment was that the two commanding officers on scene, Lieutenant Gartner and Sergeant Gallimarini, who were in charge of the execution of the arrest warrants in this case, had command decisions for how each of the plaintiff's appellants were arrested in this case. They made the decision that they be taken to jail dressed as they were. That was their decision, and that's unrefuted. The explanations, as I understand it, you're just telling me who decided. The question is why. The explanations, as I understand it, were that they had to do it quickly. Yes. That, of course, does not work. If you send the brother up twice to the room, the brother in fact asks, can I get their pants? No. So clearly the timing, that doesn't make any sense in a setting where they delayed for two times going up the stairs to the room to get shoes. So there's clearly time for that. That led, what I thought was the only other explanation, the risk to the officers of allowing them, you know, officers getting hurt to allow them to put pants on. And to me, that doesn't make, that doesn't seem as a matter of law necessarily right given that the norm is to arrest people with their pants on and the norm is to deal with the risk to officers by patting them down. They know how to do that. So I guess I just. . . To pat down suspects. I think there's a lot of things that were going on at once where a number of officers inside the structure during the time that this arrest warrant was made. I have no idea how the number of officers is responsive. Well, to get to your question, I think the court's making an assumption that there was some drawn out period of time while one officer allowed the brother, Jesse Simcox, to run up and get shoes. For the other two. . . I thought he was getting shoes for the other two people. He did. And they were allowed to put shoes on. And he asked, can I get them pants? And they said no. Why can he not? Why is timing a problem in getting pants? Timing doesn't make sense. Well, because while the one brother is getting shoes and talking to one officer about getting shoes, the officers that were in charge, Gallimareni and Gartner, are trying to ascertain whether or not they had the right suspects for their warrants. And as soon as they determined that they had the proper suspects, they ordered that the property be cleared and then the suspects are taken out. So I think the court's assuming that there was a long, drawn out period of time here that just simply I don't think is accurate. I don't think it's really supported by the record. Tell me if this case would come out differently if there was one more fact. There were four people, not three, and the fourth person was known to be heterosexual and the fourth person was allowed to put their pants on. Everything else about the case is the exact same. Would this particular claim come out differently if that were a fact in the case? I think that would suggest really a lot more than simply one person was allowed to put on pants. It would be a triable issue of fact. Well, it would certainly introduce new facts into the case. I think it would suggest entirely different circumstances. Don't you think it's pretty obvious it would be a triable issue of fact? Well, it might very well be. I think part of the problem here, though, is not only and, again, obviously there is a dispute of fact, but who are we going to attribute that to? I don't think you can just name, I think, upwards of almost a dozen people were named in this case and guess at who was supposed to have done what. Johnson, even without the affidavits, there's evidence that it was Johnson who did the slurs and Johnson who was one of the arresting officers. Johnson was certainly one of the arresting officers. Why can that claim not go forward? I don't understand why that claim can't go forward. Well, where is the rest of the equal protection claim? Where is the evidence that other individuals who do not have the same sexual orientation were treated differently under similar circumstances? There's no evidence to that. In fact, the officers testified that they've had people jump out of windows completely unclothed, and that's how they went to jail. Once they were caught and apprehended, that's how they went. There are circumstances that dictate that that might be exactly how you're transported. And there is a process when they get there, as happened here. I would have thought the way this works is they allege differential treatment, you respond in two ways. We didn't have the time to get pants, number one. And number two, we normally take people without pants because of risks of contraband. And both of those do not make sense to me as a matter of law on summary judgment. So that's a fact dispute. And I guess what I want to be clear about is that the individuals that made that decision, it's unrefuted, the individuals that made that decision, Lieutenant Gartner and Sergeant Gallimarini, are not parties to this case. And now we want to attribute their decision-making, their conduct to other folks, just sort of at random. Well, we're going to pick Johnson and say, Johnson, you're responsible for this decision, even though it's clear that Johnson was not the commanding officer on scene. It wasn't within his discretion to make that decision. His commanding officer said, take them as they are. So where will I find it in the record that Johnson had no authority here? That's throughout the depositions of Lieutenant Gartner. It's throughout the deposition of Sergeant Gallimarini. It's also throughout the deposition of the individual officers. It's sort of a paramilitary organization that operates from the top down. And that the commanding officer on scene, there's no dispute that these two officers were on scene, that they had control over this, the way that this was going to be effectuated, made this decision. And they both claim responsibility for that decision, both being Lieutenant Gartner and Sergeant Gallimarini. There's no dispute about that. No dispute that they are not in this case. And we can't have vicarious liability where we're going to now make Johnson responsible for that command decision. I assume it's not their testimony that they commanded him to make the slurs. Well, they deny that they made the slurs, but the slurs, even if they had been made, are not a basis for a constitutional violation, and there's no dispute about that. Maybe slurs by themselves, but it's slurred connected to differential treatment. But where's the evidence of differential treatment? Where's the evidence that other people under similar circumstances were allowed to put pants on? There's simply no evidence in the record to support that. In fact, the unrefuted evidence is there may be situations where they wear less to jail. You represent officers a lot. Is it the norm to take people to the police station in their underwear? Well, you know, clearly most folks arrive in more dress, but they arrive in all manner of dress, and there's a procedure when we get to jail if somebody needs additional clothing. Remember the allegation in this case was that these guys were housed for two days without clothes, and that's not true, and they now admit that it's not true. They admit within minutes of arriving at that jail they were given clothing. But they told the whole world they were held for two days without clothes, and so there's a process, there's a process that this happens. It happens frequently enough that we have procedures in place when somebody arrives to jail not properly clothed, whether they're missing a shirt or they're missing pants or they're missing clothes altogether, we have something to give them, and that's what happened here. So does it happen most of the time? No. Does it happen some of the time? It happens enough that we have a procedure to address that situation. Is it the norm when you have an early hours arrest and people are either in their bedclothes or underwear? Is that the norm? You take them as they are? Certainly it can be. I don't know that a lot of people go to the door to answer the door address in that particular state. That's what happened here. It's not something I would do, but I suppose I don't think most people would. That is what happened here. And they made, for the reasons given, whether we agree with those reasons or not, the commanding officers made the decision to transport them as they were. So we asked for affirmance, and I obviously again, I think we have to look at these things first looking at the motion to strike and whether or not there was an abuse of discretion, and I don't think appellants have pointed out anything that would constitute an abuse of discretion by the court to strike those affidavits, and those affidavits haven't been stricken. There's simply no evidence to refute the appellee's motion for summary judgment, and I think the court gets, again, there were a number of people named in this suit. The briefing really only discusses Douglas Park, Ariel Rojas, and William Johnson. They don't really discuss any of the other defendants, appellees in this matter. If there's no other questions, I have nothing further. Thank you. Thank you. I want to address some of the things that my colleague addressed as far as the equal protection claim is concerned. He mentioned that Gartner and Gallimarino had not been named in the suit. I don't want to sound like a broken record, but we had never even heard of these two officers until depositions of the officers. We made the decision then to depose those two, where they did testify that they made that decision. I think that there is absolutely Can you amend the complaint to add them? Yes, we could have. Again, I wish we had done so, but we did not. One thing that's troubling about your side of the case, you know, you lie in some things, you can be unfair that you lie in all things. This is an outrageous case from the perspective of the lies they were caught within their complaint. The only things they've said so far that are still not on video or camera. I've got to say, if I were representing these people, I'd remind them, if you happen to be able to proceed to the next stage, if I were a trial judge, I would really lay down the law. We can't have this. They had to know they were lying about this whole story. It's just really appalling that they would have done what they did, hurting the reputations of all these people. I mean, what's the explanation? For lying about not being able to wear pants because they were gay? Lying that they stayed at the station, they were sent home in underwear, that they were in underwear the whole time. They knew whether they were in underwear at the station. They knew whether they were sent home in underwear. That was completely contradicted and once it was shown there was no way out of the lie, they had to admit the lie. I mean, it's really quite outrageous. Particularly when it's going after the reputations of people. What's the explanation? I don't have an explanation. I don't know that they were given pants. I know that the first time that they went to jail, which resulted in this, is when they said that they had to walk home in their underwear. Huh? Not true. I don't think that they the second time that they went to jail, I don't think it was a matter of minutes before they were given pants. I don't know what evidence there is to support that it was within minutes that they received pants. I just want to go back to the reason that they were not given pants is in fact truthful and it was based upon them being homosexuals. They were the first that day on the warrant sweep. When they picked up other prisoners, other prisoners came into the van and asked them, why don't you guys have on I was even going back to the we were in a hurry thing. One guy was even allowed to wait for his girlfriend to come and lock the house up before they put him in the van. To say that it was for safety or time reasons just doesn't seem truthful to me from that side. I think that we have genuine issues of material fact here that need to be decided by a jury and shouldn't just be halted at the summary judgment phase. If there's nothing else, I'm finished. Thank you, counsel. Thank you.